# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MOISES GROSSETE,

      Plaintiff,

vs.                                     No. **CIV 06-634 MCA/DJS**

**CITY OF ALBUQUERQUE
OPEN SPACE POLICE DEPARTMENT**,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion for Summary Judgment* [Doc. 31] filed on August 17, 2007.  Having reviewed the pleadings and evidence of record, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendant's motion and dismisses Plaintiff's federal claims with prejudice for the reasons set forth below.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, and those claims are dismissed without prejudice.

## I.    BACKGROUND

On July 13, 2006, Plaintiff Moises Grossete filed a civil action in this Court asserting that his employer, Defendant City of Albuquerque Open Space Police Department, breached its employment contract with him and subjected him to unlawful discrimination and retaliation in violation of the New Mexico Human Rights Act and Title VII of the Civil Rights Act. Plaintiff's *Complaint* further asserts that he exhausted his administrative remedies prior to filing suit and that his claims were timely filed.  [Doc. 1.]

The Court entered an *Initial Pretrial Report* [Doc. 19] setting a series of case-management deadlines culminating in a dispositive pretrial motions deadline of August 6, 2007, which was subsequently extended to August 20, 2007, based on Plaintiff's failure to appear for his deposition.  [Doc. 30.]  On August 17, 2007, Defendant filed a motion for summary judgment [Doc. 31] seeking the dismissal of each of the claims asserted in Plaintiff's *Complaint*.

As of the date of this *Memorandum Opinion and Order*, the record reflects that Plaintiff has not filed a timely response to Defendant's motion or moved for an extension of time to do so.  The trial is set for December 11, 2007, with a pretrial conference on November 6, 2007.  It is this Court's practice to rule on summary-judgment motions before the date of the pretrial conference.

By virtue of D.N.M. LR-Civ. 56.1, the following facts gleaned from Defendant's motion papers and the attachments thereto are undisputed or deemed admitted.  Plaintiff began his employment as an Open Space Officer with the City of Albuquerque on July 15, 2000.  On May 21, 2003, he filed a Charge of Discrimination with the New Mexico Human Rights Division alleging that he was the victim of national-origin discrimination "in the form of verbal harassment directed at Hispanic and females" and "pretextual adverse discipline based on [his] national Origin, Hispanic."   In particular, Plaintiff complained that his supervisor at the time, Sergeant Abeyta, allegedly made derogatory remarks about illegal aliens and females.  [Ex. D to Doc. 32.]  According to Plaintiff, Sergeant Abeyta's alleged racial animus toward Hispanic persons and gender bias against females motivated him to

2

issue Plaintiff a letter of reprimand regarding his compliance with a "car stop policy" which prohibited Open Space Officers from stopping motor vehicles for traffic violations outside of the City's Open Space lands except when the traffic violation involved driving while intoxicated (DWI), reckless driving, or leaving the scene of an accident.  [Ex. B, C to Doc. 32.]

The Charge of Discrimination filed on May 21, 2003, was resolved without litigation by means of a Mediation Settlement Agreement which Plaintiff signed on June 18, 2003. Under the terms of this agreement, the City agreed to retract Sergeant Abeyta's letter of reprimand from Plaintiff's personnel file and have an open discussion of the car stop policy with Plaintiff and other officers.   [Ex. E to Doc. 32.]  Sergeant Abeyta subsequently resigned, and then Plaintiff was promoted to the rank of Sergeant Ranger in January 2004. [Ex. G to Doc. 32.]

On May 4, 2004, Open Space Deputy Chief Griego issued a memorandum to all Open Space Sergeants advising them that:  "You need to review the traffic stop policy with your squad.  We are still seeing a lot of traffic stops made outside of Open Space and not within our policy.  The officers need to understand that the traffic policy has not changed."  [Ex. H to Doc. 32.]

On September 13, 2004, Chief Ranger Thomas issued a memorandum to Plaintiff containing the following "Direct Order/Letter of Advisement":

> The City of Albuquerque Open Space Policy for traffic stops outside of Open Space lands is DWI, Reckless Driving, or Leaving the Scene of an Accident.  You have been notified on several occasions about this policy and

your lack of adherence.  As a Sergeant you are required to uphold and insure all policies are followed.  You need to set the example for your squad.  You have been conducting unauthorized traffic stops and this is reflecting on your work performance and the work of your squad.

I have attached the copy of the memo that was given to you on May 4, 2004 concerning this issue.  This is a written direct order, any further violations of this policy and this direct order will result in disciplinary action up to an including termination.

[Ex. I to Doc. 32.]  Plaintiff acknowledged receiving this memorandum as well as a listing of "CAD" printouts which identified the instances in which he was alleged to have conducted a traffic stop in violation of the policy; however, Plaintiff claimed that he did not understand the memorandum and disagreed with the contention that the traffic stops identified in the CAD printouts violated the car stop policy.  [Ex. J to Doc. 32, Grossete Dep. at 33-36.]

On November 30, 2004, Deputy Chief Griego issued a memorandum to Plaintiff placing him on paid administrative leave for three days pending the investigation of an incident dated November 27, 2004, when Plaintiff was alleged to have conducted a traffic stop in violation of the Open Space policy described above and then falsely reported that the stop took place on Open Space lands.  [Ex. L to Doc. 32.]  The investigation of this incident was transferred to the Internal Affairs Unit of the Albuquerque Police Department (APD) when APD took over the functions of the Open Space Unit, which were previously under the City's Parks and Recreation Department.  [Ex. N to Doc. 32.]

After following the City's procedures for a Pre-Disciplinary Hearing, APD's Chief of Police issued a final decision on March 9, 2005, imposing a six-day suspension, with two days to be held in abeyance for one year, as discipline for the charges arising from the

4

incident dated November 27, 2004.  Plaintiff also received a letter of reprimand.  [Ex. O to Doc. 32.]  Although Plaintiff was denied a transfer to a position as a Sergeant in APD's Investigative Bureau because of his previous discipline, he continues to be employed by APD as a Sergeant in another division.  [Ex. U to Doc. 32.]

Plaintiff filed another Charge of Discrimination with the Human Rights Division on May 18, 2005, alleging that his employer discriminated against him because of his national origin (Hispanic) and retaliated against him because of his previous complaints of discrimination.  [Ex. R to Doc. 32.]  This litigation followed.

## II.   **ANALYSIS**

### A.   **Standard of Review**

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  See id. at 248.  Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998).  "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'"  Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)).  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion, Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995), and "a party generally may not introduce statements from its own answers to interrogatories or requests for admission as evidence because such answers typically constitute hearsay when used in this manner." Underberg v. United States, 362 F. Supp. 2d 1278, 1283 (D.N.M. 2005) (collecting cases).

When offered by the adverse party, however, "answers to interrogatories and requests for admission usually are not considered hearsay insofar as they fall under the exception for admissions by a party opponent."  Id. (citing Fed. R. Civ. P. 33(c) and Fed.R.Evid. 801(d)(2)).  In addition to admissions by a party opponent, the Court may consider statements admissible for the limited purpose of showing their effect on the listener, see Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993), statements which constitute verbal acts or operative facts because legal consequences flow from their utterance, see Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087

(10th Cir. 2001), and other statements which fall under an exception to the hearsay rule, <u>see, e.g.,</u> Fed. R. Evid. 803(3) (allowing for consideration of statements as circumstantial proof of the knowledge, intent, or state of mind of the declarant).

Apart from these limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. <u>See Hunt v. Cromartie</u>, 526 U.S. 541, 551-52 (1999).

When, as here, the non-movant does not file a timely response to a dispositive pretrial motion, the Court may not rely on this fact alone, without further analysis, as the grounds for granting summary judgment in the movant's favor. <u>See Reed v. Bennett</u>, 312 F.3d 1190, 1194-95 (10th Cir. 2002). In order to reach such a result under this scenario, the Court must either perform the sanctions analysis outlined in <u>Meade v. Grubbs</u>, 841 F.2d 1512 (10th Cir. 1988), or "make the determination that judgment for the moving party is 'appropriate' under Rule 56." <u>Reed</u>, 312 F.3d at 1195. In this case, the Court relies on the procedure set forth in Fed. R. Civ. P. 56, rather than the <u>Meade</u> sanctions analysis. The Court does ***not*** construe Plaintiff's failure to respond in this manner as an indication of his consent to grant the motion under D.N.M. LR-Civ. P. 7.1(b).

In applying the procedure set forth in Fed. R. Civ. P. 56, however, the Court may consider any undisputed material facts set forth in the motion papers which are deemed admitted by operation of D.N.M. LR-Civ.56.1.  See LaMure v. Mut. Life Ins. Co. of N.Y., 106 F.3d 413, 1997 WL 10961, at *1 (10th Cir. 1997) (unpublished disposition); Smith v. E.N.M. Med. Ctr., 72 F.3d 138, 1995 WL 749712, at *4 (10th Cir. 1995) (unpublished disposition); Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-24 (7th Cir.1994) (approving use of local rule similar to D.N.M. LR-Civ. 56.1(b)).  Application of D.N.M. LR-Civ. P. 56.1 is consistent with the Tenth Circuit's holding in Reed, 312 F.3d at 1195, which specifically instructs that the "court should accept as true all material facts asserted and properly supported in the summary judgment motion" under these circumstances.  Therefore, the facts gleaned from Defendant's motion papers and the admissible evidence attached thereto are undisputed or deemed admitted by virtue of D.N.M. LR-Civ. 56.1.

**B.    Plaintiff's Federal Claims**

Counts 1 and 2 of Plaintiff's *Complaint* allege that Defendant discriminated against him because he is Hispanic and retaliated against him for asserting a claim of race or national-origin discrimination.[1]  Title VII of the Civil Rights Act "makes it an 'unlawful employment practice for an employer . . . to discriminate against any individual . . . , *because of* such individual's race, color, religion, sex, or national origin.'"  Desert Palace, Inc. v.

---

[1]Plaintiff's *Complaint* refers to discrimination on the basis of both race and national origin.  For purposes of this *Memorandum Opinion and Order*, the Court need not resolve whether the word "Hispanic" refers to a racial classification or a classification based on national origin.  The same legal standard applies to both classifications under Title VII.  See generally Bennun v. Rutgers State Univ., 941 F.2d 154, 170-73 (3rd Cir. 1991).

Costa, 539 U.S. 90, 92 (2003) (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis added).  Title VII also makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

Plaintiff may prove his Title VII claims through direct or circumstantial evidence.  See Desert Palace, Inc., 539 U.S. at 99-100;  Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).  To the extent he relies on circumstantial evidence, Defendant's summary-judgment motion is to be evaluated according to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Amro v. Boeing Co., 232 F.3d 790, 796 (10th Cir. 2000).  Under this framework, the employee must establish a *prima facie* case of unlawful discrimination or retaliation in order to survive a motion for summary judgment.  If the employee establishes a *prima facie* case, then the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision that is alleged to be unlawful.  If the employer meets this burden, then summary judgment is warranted unless the employee can show that there is a genuine issue of material fact as to whether the reasons preferred by the employer are pretextual or whether his race, gender, or other illegal consideration was a motivating factor in the employment decision.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-49 (2000); Kendrick, 220 F.3d at 1226.

9

There are at least two forms of discrimination or retaliation involving race or national origin that are actionable under Title VII:  disparate treatment and the creation of a hostile work environment.  See generally Trujillo v. Univ. of Colo. Health Sciences Ctr., 157 F.3d 1211 (10th Cir. 1998) (reviewing hostile work environment, disparate treatment, and retaliation claims); Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1264-65 (10th Cir. 1998) (reviewing a claim for a retaliatory hostile work environment).  When, as here, Plaintiff  presents no authority or argument in support of a hostile work environment claim, the Court will not read such a claim into his pleading.  Cf. Adler, 144 F.3d at 672 ("[T]he requirement that the nonmovant specifically reference facts in its motion materials and the record is of special importance in an employment discrimination case."); Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.").  Accordingly, the Court's focus is on Plaintiff's claim of disparate treatment.

### 1.    Plaintiff's Title VII Discrimination Claim

In order to establish a prima facie case of race or national-origin discrimination in the form of disparate treatment, Plaintiff generally must show (1) that he is a member of a protected class based on his race or national origin, (2) that he suffered an adverse employment action, and (3) that similarly situated employees were treated differently.  See Trujillo, 157 F.3d at 1215.  In determining whether these general requirements are satisfied, the Court recognizes that the elements of a *prima facie* case are to be measured by "a flexible

standard that may be modified to accommodate different factual situations." Perry v. Woodward, 199 F.3d 1126, 1140 n.10 (10th Cir. 1999) (citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977)). On the other hand, "Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal. It prohibits only intentional discrimination based upon an employee's protected class characteristics" of race, color, religion, sex, or national origin. EEOC v. Flasher Co., 986 F.2d 1312, 1319 (10th Cir. 1992).

In this case, it is undisputed that Plaintiff is Hispanic and that the suspension and related disciplinary actions arising from the incident dated November 27, 2004, are an "adverse employment action." To the extent that surrounding events (such as the prior communications regarding the "car stop policy" or the subsequent denial of his request for a transfer) are relevant to determining the reasons or motives for Plaintiff's suspension, they also may be considered in the Court's analysis. See Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2002).

To meet the third element of his *prima facie* case, Plaintiff asserts that other similarly situated non-Hispanic employees were treated differently because there were others who made traffic stops outside of Open Space lands but were not targeted for discipline in the same manner that Plaintiff allegedly was. Defendant responds that Plaintiff's allegations about "someone" (*e.g.*, Deputy Chief Griego) telling other officers to single him out or target him for disciplinary action are based on unsubstantiated and inadmissible hearsay. The record contains sworn affidavits from each of the officers that Plaintiff identified as the

sources of such hearsay, and they all deny sending or receiving any communications directed at targeting Plaintiff for disciplinary complaints.  [Ex. K to Doc. 32.]  The Court further notes that Deputy Chief Griego's memo of May 4, 2004, regarding the car stop policy was addressed to all "Open Space Sergeants," not just Plaintiff.

Even if there were other Open Space officers who were not disciplined for violating the car stop policy, Defendant points out that those officers were not similarly situated to Plaintiff because they did not occupy the supervisory position of Sergeant and/or did not exacerbate the situation by calling out a false location.  [Ex. N to Doc. 32; Griego Aff. ¶¶ 3, 4.]  See Kendrick, 220 F.3d at 1232  (concluding that an employee is similarly situated to the plaintiff if the employee deals with the same supervisor, is subject to the same standards governing performance evaluation and discipline, and violates a work rule of "comparable seriousness.").  Again, Plaintiff has failed to come forward with admissible evidence to substantiate his conclusory allegation that another similarly situated non-Hispanic officer was subjected to lesser discipline for the same type of policy violations.  See Salguero v. City of Clovis, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004) (noting that assertions not supported in the record are "insufficient to create a genuine question of material fact").

Finally, Plaintiff's deposition testimony indicates that the transfers he unsuccessfully sought after his suspension would not have resulted in a change in pay, and that regardless of his suspension he is not yet eligible to apply for a promotion to lieutenant.  While it is possible that APD's absorption of the Open Space Unit may have had the effect of delaying Plaintiff's eligibility to apply for a lieutenant position within APD, this effect results from

the same set of rules that applies to other Open Space officers who became APD employees at the time that APD absorbed the Open Space Unit. [Ex. U to Doc. 32; Grossete Dep. at 65-76.] Plaintiff has not presented any admissible evidence to show that these rules regarding APD's absorption of the Open Space Unit were applied any differently in his case.

For these reasons, I conclude that Plaintiff has not come forward with the admissible evidence necessary to support a reasonable inference that similarly situated non-Hispanic employees were treated differently with respect to the car stop policy or other work rules. It follows that Plaintiff has not established a *prima facie* case of race or national-origin discrimination, and Defendant is entitled to summary judgment on Plaintiff's Title VII discrimination claim.

I also conclude, in the alternative, that even assuming for purposes of analysis that Plaintiff has established a *prima facie* case of unlawful discrimination under Title VII, Defendant has articulated facially legitimate, nondiscriminatory reasons for imposing the disciplinary actions at issue here. These reasons were set forth and documented in the course of the administrative proceedings that resulted in Plaintiff's suspension. [Ex. N, O to Doc. 32.] Cf. Elmore v. Capstan, 58 F.3d 525, 531 (10th Cir. 1995) (concluding that employer had facially legitimate, nondiscriminatory reason for imposing discipline on employee who "submitted a falsified return-to-work slip").

Thus, it becomes Plaintiff's burden to come forward with evidence showing that his employer's reasons are pretextual or that his race or national origin were nevertheless a motivating factor in his employer's decision to discipline him for violating the car stop policy

and calling out a false location.  I conclude that Plaintiff has not met his burden of showing a genuine issue of material fact as to whether the reasons proffered by his employer are pretextual or whether his race or national origin was a motivating factor in the employment decision.  See Reeves, 530 U.S. at 147-49; Kendrick, 220 F.3d at 1226.

A plaintiff in a Title VII case can show pretext by presenting evidence that the reasons proffered by the employer are so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference that the employer did not act for those reasons.  See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  In particular, such pretext may be shown by evidence concerning the "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria."  Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999); accord Kendrick, 220 F.3d at 1230.  In addition, statements by a decision-maker that evince a discriminatory or retaliatory motive behind an employment action may be used to show pretext under the McDonnell Douglas framework so long as there is some nexus between the statements and the employment action taken against the employee.  See  English v. Colo. Dep't of Corr., 248 F.3d 1002, 1010 (10th Cir. 2001);  Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1209-10 (10th Cir. 1999), overruled in part on other grounds by Desert Palace, Inc., 539 U.S. at 99-100; McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998).

14

To show pretext or other improper motivation in this case, Plaintiff primarily relies on his disagreement with his supervisors' interpretation of the car stop policy and its application to traffic stops he conducted.   For example, Plaintiff contends that his supervisor's orders regarding the car stop policy were not lawful because they contradicted state law.  [Ex. Q to Doc. 32; Grossete Dep. at 57-58.]  Plaintiff also disagrees with Chief Thomas' contention that certain traffic stops identified in the CAD printouts were unauthorized.  [Ex. J to Doc. 32; Grossete Dep. at 33-36.]  As for the contention that he called out a false location during a traffic stop, Plaintiff responds that it was common practice to call out the closest Open Space location as a landmark rather than using a numeric address. [Ex. P to Doc. 32; Grossete Dep. at 50-51.]

It does not follow that Defendant's stated reasons for subjecting Plaintiff to disciplinary action are merely a pretext used to hide an underlying racial animus against Hispanic employees.  Unlike the City's Merit System Ordinance or collective-bargaining agreements, Title VII is not a "'civil service statute [that] requires every employer to have good reasons for its deeds.'"  Neal v. Roche, 349 F.3d 1246, 1252 (10th Cir. 2003) (quoting Benzies v. Illinois Dep't of Mental Health & Developmental Disabilities, 810 F.2d 146, 148 (7th Cir. 1987)); accord Flasher Co., 986 F.2d at 1312.  The relevant prohibitions in Title VII of the Civil Rights Act are limited to invidious discrimination on the basis of race, color, religion, sex, or national origin, and do not encompass the broader concept of "just cause."

Thus, for purposes of a claim of discrimination under Title VII, "[a]n articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight,

it turned out to be poor business judgment." McKnight, 149 F.3d at 1129.  Evidence that Plaintiff's supervisors were simply wrong or mistaken in concluding that Plaintiff violated work rules is not sufficient to show that his supervisors' reasons are pretextual because "the factual dispute at issue [in a Title VII case] is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).  "'[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual.'" Pastran v. K-Mart Corp., 210 F.3d 1201, 1206 (10th Cir. 2000) (quoting Hardy v. S.F. Phosphates L.C., 185 F.3d 1076, 1080 (10th Cir. 1999).  "The test is good faith belief." McKnight, 149 F.3d at 1129.  Accordingly, "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." Shorter, 188 F.3d at 1209.

For these reasons, Plaintiff cannot create evidence of pretext solely through his own interpretation of the car stop policy and its application to the traffic stops he conducted.  The possibility that his supervisors were mistaken in believing other witnesses' version of events instead of Plaintiff's version is not, in itself, sufficient to show pretext.  If his supervisors took disciplinary action against Plaintiff based on their belief that he violated work rules, "such belief would not be pretextual even if the belief was later found to be erroneous." McKnight, 149 F.3d at 1129.

While there may be room for differences of opinion in assessing the credibility of witnesses and the weight of the evidence collected during the investigation of Plaintiff's

compliance with the car stop policy, the conclusions that his supervisors reached as a result of this investigation are not weak, implausible, or inconsistent enough to support a reasonable inference of pretext under Title VII.  In this regard, I note that Plaintiff readily admits that the incident dated November 27, 2004, involved a traffic stop "outside the Open Space location" and that he first called it in "as [being] in an Open Space parking lot."  [Ex. P; Grossete Dep. at 50.]

There is also nothing in the evidence of record to support a reasonable inference that those involved in the decision to suspend Plaintiff for the incident dated November 27, 2004, or to deny his request for a transfer after that date, made any disparaging remarks about his race or national origin during their decision-making process.  Rather, the inappropriate remarks identified by Plaintiff are attributed to Sergeant Abeyta (whom Plaintiff describes as Native American) during the period running from December 2002 until May 2003. Sergeant Abeyta's derogatory remarks allegedly were directed at illegal aliens and females.[2]

Considering that Sergeant Abeyta left the picture after the mediated settlement of Plaintiff's prior Charge of Discrimination in 2003, any derogatory statements that he made constitute "stray remarks" rather than evidence of discrimination or retaliation occurring after

---

[2]The Court considers the statements of other City personnel that Plaintiff personally heard insofar as they constitute vicarious admissions by a party opponent concerning matters within the scope of their employment and were made during the course of their agency or employment relationship with Defendant City of Albuquerque.  See Fed. R. Evid. 801(d)(2)(D); Pastran, 210 F.3d at 1203 n.1.  To the extent that these statements are not admissions by a party opponent, the Court considers them insofar as they are introduced for the purpose of showing the declarant's then existing state of mind.  See Wright v. Southland Corp., 187 F.3d 1287, 1304 n.21 (11th Cir. 1999); Pastran, 210 F.3d at 1203 n.1.

2003.  See McKnight, 149 F.3d at 1129.  Although comments evincing an improper bias or prejudice may provide circumstantial evidence of a discriminatory employment decision, see Shorter, 188 F.3d at 1209-10, the Tenth Circuit has emphasized that the statements in question must be "made by the decision maker," and that "there must be a nexus between the discriminatory statements and the [hiring] decision," McKnight, 149 F.3d at 1128; accord English, 248 F.3d at 1010.

Such a nexus to the decision-making process is lacking in this case.  Sergeant Abeyta's alleged derogatory remarks about illegal aliens and females were not specifically directed at Plaintiff and occurred long before the Charge of Discrimination at issue in this case.  Notwithstanding those remarks, Plaintiff received a letter of apology from Sergeant Abeyta, a mediated settlement of the prior Charge of Discrimination arising from Plaintiff's relationship with Sergeant Abeyta, and a promotion to the rank of Sergeant after Sergeant Abeyta left that position.  All of these events occurred months before the memos from Deputy Chief Griego and Chief Thomas regarding the car stop policy and the investigation of the incident dated November 27, 2004.

Finally, the Court notes that several of Plaintiff's fellow officers and supervisors in the Open Space Unit are also Hispanic.  For example, Officer Patrick Hernandez identifies himself as Hispanic in his affidavit and goes on to state that he "never heard anyone make any inappropriate racial/ethnic comments to" Plaintiff.  [Ex. K; P. Hernandiz Aff. ¶ 4.] Similarly, Officer Victor Hernandez identifies himself as Hispanic in his affidavit and goes on to state that he was the one who reported to Deputy Chief Griego that Plaintiff had made

an unauthorized traffic stop and called out a false location during the November 2004 incident.  Officer Victor Hernandez also stated in his affidavit that he "never heard anyone make any inappropriate racial/ethnic comments to" Plaintiff.  [Ex. K; V. Hernandez Aff. ¶¶ 5, 9.]  Under the circumstances, it is not reasonable to infer that these individuals would have singled out people of their own race or national origin for mistreatment, nor is there statistical evidence that Plaintiff's supervisors or co-workers were targeting him because he belonged to a small group of employees whose race or national origin differed from the majority.

I conclude that the evidence of record does not support a reasonable inference that Defendant's reasons for the disciplinary actions in question are pretextual or that discrimination based on race or national origin were motivating factors in these actions.  For all of the above reasons, Defendant is entitled to summary judgment on Plaintiff's Title VII discrimination claim, and this claim must be dismissed with prejudice.

### 2.    Plaintiff's Title VII Retaliation Claim

The Court next turns to Plaintiff's claim that Defendant retaliated against him for engaging in activity that is protected under Title VII of the Civil Rights Act.   Plaintiff does not offer direct evidence of such retaliation.  In order to establish a prima facie case of retaliation by means of circumstantial evidence, Plaintiff must show "(1) that . . . [he] engaged in protected activity as defined above; (2) that the employer took an adverse employment action against the plaintiff; and (3) that there exists a causal connection between the protected activity and the adverse action."  Aquilino v. Univ. of Kansas, 268 F.3d 930, 933 (10th Cir. 2001).  The Supreme Court and the Tenth Circuit have recently clarified that

"the 'adverse employment action' standard is not restricted to acts and harm occurring in the workplace or related to employment," so long as the employer's retaliatory action is "real and significant" and "materially adverse."  Jencks v. Modern Woodmen of Am., 479 F.3d 1261, 1265 (10th Cir. 2007) (citing Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2409 (2006)).

As previously stated in the discussion of Plaintiff's Title VII discrimination claim, the central "adverse employment action" at issue here is the  suspension that arose from the investigation of the incident dated November 27, 2004.  With respect to this suspension and related events (such as the subsequent denial of a transfer), Plaintiff fails to establish a prima facie case of retaliation under Title VII because the evidence of record does not support a reasonable inference that such adverse employment action has a causal relationship to any protected activity under Title VII.

Viewing the evidence of record in the light most favorable to Plaintiff, he may have engaged in activity protected by Title VII when he began complaining to other officers about Sergeant Abeyta's derogatory comments regarding illegal aliens and females.  Such complaints culminated in the earlier Charge of Discrimination dated May 21, 2003 [Ex. D to Doc. 32], and the Mediation Settlement Agreement dated June 18, 2003 [Ex. E to Doc. 32].[3]

---

[3]The Court considers these documents not for the truth of the matters asserted therein but to show their effect on the recipient(s), *i.e.*, giving them notice that Plaintiff was opposing an employment practice alleged to violate Title VII.  See generally Faulkner, 3 F.3d at 1434.

The Court recognizes that "protected activity" under Title VII is not limited to the formal Charge of Discrimination and Mediation Settlement Agreement but may also encompass Plaintiff's informal complaints or reports to supervisors about workplace discrimination on the basis of race, color, religion, sex, or national origin.  See, e.g., O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1255 (10th Cir. 2001).  The Court also recognizes that such activity may be protected under Title VII regardless of the merits of Plaintiff's underlying complaint of discrimination.  All that is required in this context is "a reasonable good-faith belief" that the "underlying conduct" violated Title VII's prohibition against discrimination based on race, color, religion, sex, or national origin.  See Crumpacker v. Kansas Dep't of Human Resources, 338 F.3d 1163, 1172 (10th Cir. 2003).  Thus, the Court's decision to grant Defendants' summary-judgment motion on Plaintiff's Title VII discrimination claim does not necessarily preclude him from proceeding with a Title VII retaliation claim.

On the other hand, an activity must at least place the employer on notice that the employee is opposing some employment practice relating to race, color, religion, sex, or national origin in order to warrant protection under Title VII.  "Opposition to an employer's conduct is protected by § 2000e-3(a) only if it is opposition to a 'practice made an unlawful employment practice by [Title VII].'  Title VII does not prohibit all distasteful practices by employers." Petersen v. Utah Dep't of Corrections, 301 F.3d 1182, 1188 (10th Cir. 2002).  Thus, discrimination based upon characteristics or factors other than "race, color, religion, sex, or national origin" is not covered by Title VII.  See Flasher Co., 986 F.2d at 1316 n.4;

Petersen, 301 F.3d at 1188; Robbins v. Jefferson County Sch. Dist. R-1, 186 F.3d 1253, 1258 (10th Cir. 1999), abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

For these reasons, Plaintiff's voicing of his objections to Defendant's car-stop policy, in and of itself, does not constitute "protected activity" under Title VII, because Plaintiff's disagreement with the car-stop policy did not involve any "practice made an unlawful employment practice" by Title VII.   See 42 U.S.C. §§ 2000e-2, 2000e-3(a).   Rather, Plaintiff's objections to the car-stop policy's legality or application were generic complaints of "unfair conduct" that  did not refer to any employee's race or national origin.  Petersen, 301 F.3d at 1188.

The  Court does not consider whether Plaintiff's expression of his views about the car-stop policy were protected by the First Amendment or other laws, because the only federal civil-rights law that is the subject of Plaintiff's *Complaint* in this action is Title VII of the Civil Rights Act.   The definition of "protected activity" under this specific statute is not broad enough to include mere disagreement with an employer's interpretation of work rules that do not involve a classification based on race, color, religion, sex, or national origin.  See Balderas v. La Casita Farms, Inc., 500 F.2d 195, 198-99 (5th Cir. 1974).

Similarly, the Court does not consider the second Charge of Discrimination dated May 18, 2005 [Ex. R to Doc. 32] as a separate form of "protected activity" that is actionable in this litigation, because the disciplinary action at issue here preceded that second Charge of Discrimination.   Disciplinary actions which Defendant had already initiated before the date

of Plaintiff's second Charge of Discrimination could not have been caused by that charge. See Morgan, 108 F.3d at 1324; Vigil v. Colo. Dep't of Higher Educ., 185 F.3d 876, 1999 WL 407479, at *5 (10th Cir. 1999) (unpublished disposition concluding that "temporal proximity [is] insufficient to establish pretext when disciplinary action had begun prior to the protected activity"); Philips v. Hemsing Semiconductors, 185 F.3d 874, 1999 WL 476017, at *4 (10th Cir. 1999) (unpublished disposition reaching similar conclusion).

Once the definition of the "protected activity" at issue in this litigation is limited by the parameters described above, it becomes apparent that Plaintiff has failed to show any temporal proximity between his complaints regarding Sergeant Abeyta's comments about illegal aliens and females in 2003 and the subsequent disciplinary action arising from the unauthorized traffic stop more than a year later on November 27, 2004. Further, there are a number of intervening events which serve to defeat any reasonable inference of a causal relationship between Plaintiff's protected activity in 2002 or 2003 and the subsequent discipline he received in 2004.

For example, the evidence of record indicates that Plaintiff's involvement with Sergeant Abeyta ended shortly after the mediated settlement agreement of June 18, 2003, and that Sergeant Abeyta resigned in October 2003. There is no evidence of record to show that Sergeant Abeyta, or someone acting under his authority, was involved in the subsequent events leading up to Plaintiff's suspension or the reporting of the incident dated November 27, 2004. After Sergeant Abeyta left the Open Space Unit in October 2003, Plaintiff was then promoted to the rank of Sergeant in January 2004.

23

Given the lack of temporal proximity described above and the presence of intervening events such as Plaintiff's promotion to the rank of Sergeant, it is not reasonable to infer a causal connection between Plaintiff's protected activity and any adverse action that followed. Accordingly, Plaintiff fails to establish a prima facie case of retaliation under Title VII.

Even assuming for purposes of analysis that Plaintiff had established a prima facie case of retaliation, I would still conclude that Plaintiff has not come forward with admissible evidence to defeat Defendant's motion for summary judgment on the Title VII retaliation claim presented here. Under the burden-shifting framework outlined above, the presence of a prima facie case of retaliation would only mean that Defendant must come forward with evidence of a legitimate, non-retaliatory reason for its decision to suspend or otherwise discipline Plaintiff. See Pastran, 210 F.3d at 1206. Defendant has met this burden of production by presenting evidence that the suspension and related discipline was imposed because of Plaintiff's violation of the car-stop policy in combination with his calling out a false location during an unauthorized traffic stop. A jury could reasonably infer from the evidence of record that Defendant had a legitimate basis for concluding that Plaintiff committed such violations.

As Defendant has met its burden of producing evidence of legitimate, non-retaliatory reasons for its decisions, the burden shifts back to Plaintiff to show that there is a genuine issue of material fact as to whether the reasons proffered by Defendant are pretextual. See Pastran, 210 F.3d at 1206. The Court concludes that Plaintiff has not met this burden with respect to his Title VII retaliation claim.

24

For the reasons previously stated in the discussion of Plaintiff's discrimination claim, he has failed to come forward with admissible evidence to support a reasonable inference that other employees within the Open Space Unit or elsewhere had somehow been directed or encouraged to single him out for disciplinary complaints, or that other similarly situated officers were treated differently with respect to their compliance with the car-stop policy. In asserting a retaliation claim, Plaintiff again has failed to come forward with evidence showing the type of weaknesses, inconsistencies, or irregularities that would support a reasonable inference of pretext or retaliatory motive behind the disciplinary actions that Defendant undertook after Plaintiff voiced his complaints regarding Sergeant Abeyta's alleged comments about illegal aliens and females. Thus, Defendant is entitled to summary judgment on Plaintiff's Title VII retaliation claim as well.

### D.    **Plaintiff's State-Law Claims**

Defendant asserts that it is also entitled to summary judgment on the remaining state-law claims asserted in Plaintiff's *Complaint*. Because these claims arise under state law, they are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Having granted summary judgment on all of Plaintiff's claims arising under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S.

25

715, 726 (1966).  In so declining, the Court has considered whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.  See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995).  The Court is not convinced that these factors weigh in favor of retaining jurisdiction.  In this regard, the Court notes that the parties have previously entered into a mediated settlement agreement, and some of Plaintiff's state-law claims are likely to be intertwined with that agreement and any statute of limitations that may apply under state law. Notions of comity and federalism demand that a state court try such claims in the first instance, absent compelling reasons to the contrary.  See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990).  In addition, the Court's decision not to exercise supplemental jurisdiction is not necessarily fatal to Plaintiff's state-law claims, as 28 U.S.C. § 1367(d) may provide for the tolling of the limitations period regarding these claims while this litigation was pending.

## III.  CONCLUSION

For the foregoing reasons, Defendant is entitled to summary judgment based on undisputed material facts warranting dismissal of all of Plaintiff's federal claims.  Plaintiff's state-law claims are dismissed without prejudice.

**IT IS THEREFORE ORDERED** that *Defendant's Motion for Summary Judgment* [Doc. 31] is **GRANTED**.

**IT IS FURTHER ORDERED** that the PRETRIAL CONFERENCE previously set for Tuesday, November 6, 2007, at 9:00 a.m., the CALL OF THE CALENDAR previously

set for Thursday, December 6, 2007, at 9:00 a.m., and the JURY SELECTION/TRIAL

previously set for Tuesday, December 11, 2007, at 9:00 a.m. are **VACATED**.

      **IT IS FURTHER ORDERED** that all of Plaintiff's federal claims are **DISMISSED**

**WITH PREJUDICE**.

      **IT IS FURTHER ORDERED** that all of Plaintiff's state law claims are

**DISMISSED WITHOUT PREJUDICE**.

      **SO ORDERED**, this 28th day of September 2007, in Albuquerque, New Mexico.

 

                                         _____

                                         **M. CHRISTINA ARMIJO**
                                         United States District Judge

27